IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | Criminal Action No. |
|---|---|
| v. | 1:14-CR-00450-WSD-1 |
| MARCUS AARON SCISSUM | |

**Government's Sentencing Memorandum**

The United States of America, by John A. Horn, Acting United States Attorney, and Tracia M. King, Assistant United States Attorney for the Northern District of Georgia, files this memorandum in support of the government's sentencing recommendation.

**INTRODUCTION**

On December 15, 2014, the Defendant pled guilty to a one-count Information which charged him with conveying false information in violation of Title 18, United States Code, § 1038. (PSR ¶ 2). For the reasons that follow, the government recommends a sentence below the advisory Sentencing Guidelines range. Specifically, the government recommends a sentence of probation for a period of five (5) years.

**FACTUAL BACKGROUND**

On June 17, 2013 at approximately 10:06 a.m., the Defendant posted on CNN's viewer feedback website a threat stating that he planned to bomb all shopping malls owned by the Cafaro Company and its corporate headquarters.

(PSR ¶ 6). The Defendant also stated in the same post that he planned to bomb Paulding County, Georgia and the Dangote Group in Nigeria. (Id.) Approximately 28 minutes later, the Defendant called CNN Viewer Communications Group and stated that he planned to bomb malls in Youngstown and that he planned to bomb Paulding County, Georgia. (Id. at 8). The Defendant called from the same telephone number that was associated with the message he posted online. (Id.)

## DISCUSSION

A. The Enhancement Pursuant to 2A6.1(b)(2)(A) Does Not Apply.[1]

The Presentence Report ("PSR") provides that the Defendant's base offense level is 12 pursuant to the application of U.S.S.G. § 2A6.1. (PSR ¶ 15). A two-level enhancement was applied pursuant to U.S.S.G. § 2A6.1(b)(2)(A), which states that a base offense level is increased by two levels if "the offense involved more than two threats." (PSR ¶ 16). The Probation Officer applied this increase based on the finding that the message posted to CNN's website contained a threat to four distinct people and places, that the Defendant made separate threats when he later called CNN, and that the Defendant conveyed threats the following day in the presence of medical personnel. (Id.)

---

[1] Initially, the government indicated that it had no objections to the PSR. However, after taking a closer look at the Application Notes and the applicable case law, it now appears that an objection is warranted in order to prevent the district court from incorrectly calculating the applicable sentencing guidelines range. *See Gall v. United States*, 552 U.S. 38, 49; 128 S. Ct. 586, 596 (2007).

The Defendant urges that the two-level increase is improperly applied because the subsequent telephone threat and the threat made to medical personnel the following day do not constitute true threats within the context of U.S.S.G. § 2A6.1 (b)(2)(A). This court, however, does not have to make a determination as to whether the threats at issue are true threats in order to sustain the objection. The Sentencing Guidelines' Application Note and case law make it clear that the enhancement pursuant to subsection (b)(2)(A) does not apply.

The facts of this case establish that there is only one threatening communication that may be considered for purposes of applying this enhancement. That one threat is the one the Defendant communicated via the online post to CNN's website. This threat is the offense conduct. The other threats, which occurred after this offense conduct, cannot be considered for purposes of applying subsection (b)(2)(A).

When a district court is considering the application of U.S.S.G. § 2A6.1(b)(2)(A), the number of threats is determined by the number of communications made, not by the number of victims threatened within a communication. *United States v. Scott*, 441 F.3d 1322, 1326-27 (11th Cir. 2006). Moreover, Application Note 1 instructs that "[i]n determining whether subsections (b)(1), (b)(2) and (b)(3) apply, the court shall consider both conduct that occurred prior to the offense and the conduct that occurred during the

offense."[2] U.S.S.G. § 2A6.1, comment. (n.1); *see Scott*, 441 F.3d at 1329 (finding that the district court erred in applying an enhancement pursuant to U.S.S.G. § 2A6.1(b)(1) because the defendant's statement to FBI was made after the crime was completed). Accordingly, the Eleventh Circuit Court of Appeals "has concluded that conduct that did not occur 'before or during' the offense, but rather 'after' the offense has been completed, is not considered in determining whether to apply a § 2A6.1(b) enhancement." *U.S. v. Sheppard*, 243 F. App'x 580, *2 (11th Cir. 2007)(citing *Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006)).

With these principles in mind, the instant case involved three threatening communications: one communication made via an online post (PSR ¶ 6), one communication made via a telephone call (PSR ¶ 8), and one communication made in person to medical personnel during the course of seeking mental health treatment (PSR ¶ 12). The offense conduct listed in the one-count Information concerns the message the Defendant posted on CNN's website. That message was posted, and thus the crime completed, at 10:06 a.m.. The next threat, which was the telephone call to CNN, occurred approximately 28 minutes after the completion of the crime charged in the Information. (PSR ¶ 8). Additionally, the Defendant communicated the threat to medical personnel the day after the offense conduct date. (PSR ¶ 12). Since two of the three communications occurred after the completion of the conduct charged in the Information, they

---

[2] The Eleventh Circuit Court of Appeals treats the commentary in the Sentencing Guidelines Manual as authoritative. *United States v. Searcy*, 418 F.3d 1193, 1195 n.3 (11th Cir. 2005).

4

cannot be considered by this Court for purposes of applying the two level increase under subsection (b)(2)(A). Thus, the two level enhancement should be applied in calculating the Defendant's guidelines range.

> B. A Variance From The Guidelines Range Is Appropriate Under the Factors Set Forth at 18 U.S.C. § 3553(a).

In determining a reasonable sentence, the Court should begin by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007); *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008). From there, the Court should assess the factors set forth in Title 18, United States Code, § 3553(a) to determine a reasonable sentence. *Gall*, 552 U.S. at 49-50; *Pugh*, 515 F.3d at 1189-90. The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, the need for the sentence to provide just punishment, the protection of the public, and the need to provide the defendant with needed medical care. "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir.2007).

Typically, the government recommends a sentence within the properly calculated Guidelines range because the Guidelines often yield a sentence that accurately reflects a defendant's culpability relative to similarly-situated individuals. The Guidelines do so by incorporating such critical elements as a defendant's criminal history, the severity of the instant offense, and mitigating or aggravating factors such as role in the offense, abuse of position of trust, and the

5

vulnerability of the victims. Occasionally, when the government determines that the Guidelines do not adequately capture the severity (or lack thereof) of a defendant's crimes, the government may seek a departure or variance.

In this case, the PSR calculated the Defendant's sentencing guidelines range to be 27 to 33 months in custody with a term of supervised release authorized for up to 3 years. (PSR at p.14). The government, however, is recommending a sentence variance and that the Court impose a sentence of probation for a period of five years. Such a variance below the Guidelines would be reasonable under the factors set forth in § 3553(a). The government's analysis of those factors and the grounds for its recommendation are detailed below.

1. The Defendant's History and Need for Mental Health Treatment.

"The district court has wide latitude to consider many factors, including the need for mental health treatment, when imposing a sentence. Indeed, § 3553(a) specifically directs the court to consider a defendant's need for medical care." *U.S. v. Zohfeld*, 595 F.3d 740 (7th Cir. 2010)(citing 18 U.S.C. § 3553(a)(2)(D))[3]. The Defendant in this matter suffers from a mental illness that impacted his behavior to a large degree. (See PSR ¶¶ 46 and 47). The Defendant, who has suffered from the specified mental illness listed in the PSR since the age of 15, was in fact admitted into a mental health facility due to being in a state of mental health crisis the day after he communicated the threats to CNN. (PSR ¶¶ 12, 46-47).

---

[3] Section 3553(a)(2)(D) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the need for sentence imposed to provide the defendant with needed [...] medical care, or other correctional treatment in the most effective manner."

6

Even the PSR recognizes that the Defendant's mental illness is present to a degree that a departure pursuant to U.S.S.G. § 5H1.3 may be warranted. (PSR at p. 15). U.S.S.G. § 5H1.3 provides that, "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." Moreover, mental health departures under the Guidelines may be considered as grounds for a departure as long as the Defendant has not committed a violent crime.[4] *United States v. Fairman*, 947 F.2d 1479 (11th Cir.1991), cert. denied, 503 U.S. 947, 112 S. Ct. 1503, 117 L. Ed. 2d 642 (1992); *United States v. Russell*, 917 F.2d 512, 517 (11th Cir.1990), cert. denied, 499 U.S. 953, 111 S. Ct. 1427, 113 L. Ed. 2d 479 (1991). The instant case does not involve a crime of violence for the reason set out in the section below. Moreover, the Defendant's mental illness was a factor in the offense conduct to a degree that is not present in typical cases covered by the Guidelines. Accordingly, the government contends that since the Defendant would likely qualify for a departure under the Sentencing Guidelines, then a variance downward for similar reasons would also be reasonable.

Presently, the Defendant's Sentencing Guidelines range is calculated to be 27 to 33 months in custody with an authorized period of supervised release for up

---

[4] The Defendant pled guilty to 18 U.S.C. § 1038. This offense does not constitute a crime of violence. *See United States v. Montoya*, 486 F.Supp.2d 996, 1005 (D. Ariz. 2007) (holding that violation of 18 U.S.C. § 1038 for placing a fake bomb in a mailbox did not involve a "crime of violence").

to three (3) years. (PSR at 14)[5]. The Defendant has already served approximately 15 months in federal custody. (See PSR ¶ at p.1). Additionally, the information the government obtained during the course of the investigation, seems to establish that the Defendant does not pose a threat to himself or to others when he submits to mental health treatment as directed.

Given the amount of time the Defendant has already served in custody and the Defendant's mental illness history, the government recommends that the district court impose a sentence of probation for a period of five (5) years. Moreover, the government requests that the sentence includes the special condition that the Defendant continues mental health treatment as directed by his mental healthcare provider.

2. The Nature and Circumstances of the Offense, and the Seriousness of the Offense.

The Defendant is charged with providing false information in violation of 18 U.S.C. § 1038. This offense does not contain the use of force, the attempted use of force, or the threatened use of force as an element of its offense. Although the threats the Defendant made were indeed serious, the investigation revealed that the Defendant had no means or intentions to actually cause any harm. Thus, the Defendant did not commit a crime of violence. *See United States v. Montoya*, 486 F. Supp.2d 996 (D. Ariz. 2007); and *United States v. Smith*, 2014 WL 4419268 (S.D.

---

[5] If the Defendant's objection to the enhancement pursuant to U.S.S.G. § 2A6.1(b)(2)(A) is sustained, the resulting Sentencing Guidelines range will be 21 to 27 months in custody.

Ill. September 9, 2014). Furthermore, as previously stated, the investigation establishes that the Defendant's mental illness contributed to the Defendant's commission of this offense.

**Conclusion**

Considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends that this Court impose a sentence variance below the Guidelines range and accordingly impose a sentence of probation for a period of five (5) years.

Respectfully submitted,

JOHN A. HORN
   *Acting United States Attorney*


/S/ TRACIA M. KING
TRACIA M. KING
   *Assistant United States Attorney*
Georgia Bar No. 421380

**Certificate of Service**

 I served this document today by filing it using the Court's CM/ECF system, which automatically sends electronic notification to the parties and counsel of record.

    Suzanne Hashimi
    Attorney for the Defendant
    Federal Defender Program, Inc.
    Suite 1500, Centennial Tower
    101 Marietta Street, NW
    Atlanta, GA  30303

February 18, 2015

        /s/ TRACIA M. KING
        TRACIA M. KING

        *Assistant United States Attorney*